UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| THOMAS PARRISH, individually and on behalf of all others similarly situated,<br><br>v.<br><br>FRITO-LAY NORTH AMERICA, INC. | Case No. 4:22-cv-00284<br>FLSA Collective Action<br>Fed. R. Civ. P. 23 Class Action |

## PLAINTIFF'S ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### Summary

1. Like many other companies across the United States, Frito-Lay's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2. That hack led to problems in timekeeping and payroll throughout Frito-Lay's organization.

3. As a result, Frito-Lay's workers who were not exempt from the overtime requirements under federal and state law, were not paid for all hours worked or were not paid their proper overtime premium after the onset of the Kronos hack.

4. Thomas Parrish is one such Frito-Lay worker.

5. Frito-Lay could have easily implemented a system for recording hours and paying wages to non-exempt employees until issues related to the hack were resolved.

6. But it didn't. Instead, Frito-Lay used prior pay periods or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

7. Frito-Lay pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8. The burden of the Kronos hack was made to fall on front-line workers—average Americans—who rely on the full and timely paymet of their wages to make ends meet.

9. Frito-Lay's failure to pay wages, including proper overtime, for all hours worked to its workers across the United States violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10. Frito-Lay's failure to pay wages, including proper overtime, for all hours worked, and to provide accurate wage statements, to its workers in New York also violates the New York Labor Law (NYLL), Art. 6, §§ 190 *et seq.*, and Art. 19, §§ 650 *et seq.*, as well as supporting New York State Department of Labor Regulations.

11. Parrish brings this lawsuit to recover these unpaid overtime wages and other damages owed by Frito-Lay to him and the non-overtime-exempt workers like him, who were the ultimate victims of not just the Kronos hack, but also Frito-Lay's decision to make its front line workers bear the economic burden for the hack.

12. This action seeks to recover the unpaid wages and other damages owed by Frito-Lay to all these workers, along with the penalties, interest, and other remedies provided by federal and New York law.

### JURISDICTION & VENUE

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14. The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

15. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Frito-Lay is headquartered in this District.

## PARTIES

16. **Plaintiff Thomas Parrish** is a natural person.

17. Parrish has been, at all relevant times, an employee of Frito-Lay.

18. Parrish has worked for Frito-Lay since November 2021.

19. Parrish represents at least two groups of similarly situated Frito-Lay workers.

20. Parrish represents a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former hourly and salaried employees of Frito-Lay who were non-exempt under the FLSA and who worked for Frito-Lay in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**[1]

21. Parrish represents a class of similarly situated workers under New York law pursuant to Federal Rule of Civil Procedure 23. This "New York Class" is defined as:

> **All current or former hourly and salaried employees of Frito-Lay who were not exempt from overtime pay and who worked for Frito-Lay in New York at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

22. Together, throughout this Complaint, the FLSA Collective members and New York Class members are referred to as the "Similarly Situated Workers."

23. **Defendant Frito-Lay North America, Inc. ("Frito-Lay")** is a foreign corporation.

24. Frito-Lay maintains its headquarters and principal place of business in this District.

---

[1] The FLSA Collective excludes those Packers who worked for Frito-Lay on or after December 11, 2021, and who opt into *Montgomery v. Frito-Lay, Inc.*, No. 3:22-cv-00185-N (N.D. Tex.) by filing a consent to join that lawsuit.

25. Frito-Lay may be served by service upon its registered agent, **CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201**, or by any other method allowed by law.

## COVERAGE UNDER THE FLSA

26. At all relevant times, Frito-Lay was an employer of Parrish within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

27. At all relevant times, Frito-Lay was an employer of the FLSA Collective members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

28. At all relevant times, Frito-Lay has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

29. During at least the last three years, Frito-Lay has had gross annual sales in excess of $500,000.

30. During at least the last three years, Frito-Lay was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

31. Frito-Lay employs many workers, including Parrish, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

32. The goods and materials handled, sold, or otherwise worked on by Parrish, and other Frito-Lay employees and that have been moved in interstate commerce include, but are not limited to, food and beverages.

## FACTS

33. Frito-Lay makes and distributes foods and snacks.

34. Frito-Lay employees over 55,000 employees. Frito-Lay, Our People, https://www.fritolay.com/about-frito-lay/our-people (last visited Apr. 4, 2022).

35. Many of Frito-Lay's employees are paid by the non-overitme-exempt hourly and salaried workers.

36. Since at least 2021, Frito-Lay has used timekeeping software and hardware operated and maintained by Kronos.

37. On or about December 11, 2021, Kronos was hacked with ransomware.

38. The Kronos interfered with its clients, including Frito-Lay's, ability to use Kronos's software and hardware to track hours and pay employees.

39. Since the onset of the Kronos hack, Frito-Lay has not kept accurate track of the hours that Parrish and Similarly Situated Workers have worked.

40. Instead, Frito-Lay has used various methods to estimate the number of hours Parrish and Similarly Situated Workers work in each pay period.

41. For example, Frito-Lay issued paychecks based on the workers' scheduled hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

42. This means that employees who were non-exempt and who worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

43. Even if certain overtime hours were paid, the pay rate would be less than the full overtime premium.

44. Many employees were not even paid their non-overtime wages for hours worked before 40 in a workweek.

45. Parrish is one such employee.

46. Instead of paying Parrish for the hours he actually worked (including overtime hours), Frito-Lay simply paid based on estimates of time or pay, or based upon arbitrary calculations and considerations **other than** Parrish's actual hours worked and regular pay rates.

47. In some instances, Parrish was paid portions of overtime hours worked, but the overtime rate was not at the proper overtime premium of at least 1.5x the regular rate of pay, including required adjustments for shift differentials and non-discretionary bonsuses.

48. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other adjustments required by law.

49. Frito-Lay knows they have to pay proper overtime premiums to non-exempt hourly and salaried employees.

50. Frito-Lay knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

51. Frito-Lay knows it has to pay the wages it agreed to pay its employees.

52. Frito-Lay knows this because, prior to the Kronos hack, it routinely paid these workers for all hours worked at the rates it agreed to pay them.

53. Frito-Lay could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

54. Instead of accurately tracking hours and paying employees wages and overtime, Frito-Lay decided to arbitrarily pay these employees, without regard to the wages and overtime they were owed.

55. It was feasible for Frito-Lay to have its employees and managers report accurate hours so they could be paid for the work they did for the company.

56. But they didn't do that.

57. In other words, Frito-Lay pushed the effects of the Kronos hack onto the backs of their most economically vulnerable workers, making sure that it kept the money owed to those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

58. Parrish is one of Frito-Lay's employees who had to shoulder the burden of this decision by Frito-Lay.

59. Parrish was and is a non-exempt hourly employee of Frito-Lay.

60. Parrish regularly works over 40 hours per week for Frito-Lay.

61. Parrish's normal, pre-Kronos hack hours are reflected in Frito-Lay's records.

62. Parrish had contractual agreement with Frito-Lay to pay him for all hours worked.

63. Parrish's contractual agreement with Frito-Lay required him to be paid for all hours worked at an amount equal to his regular rate for hours up to 40 in a workweek, and at an overtime premium of no less than 1.5x his regular rate of pay for hours over 40 in a workweek.

64. Since the Kronos hack, Frito-Lay has not paid Parrish for him actual hours worked each week.

65. Since the hack took place, Frito-Lay has not been accurately recording the hours worked by Parrish and its other workers.

66. Since the Kronos hack, Frito-Lay has not paid Holdbert and its other workers pursuant to its contractual agreement with them.

67. Even though Frito-Lay has had Parrish record and submit him hours, Frito-Lay have not issued proper payment for all hours worked.

68. Even when Frito-Lay has issued payment to Parrish for any overtime, the overtime is not calculated based on Parrish's regular rates, as required by federal and New York law.

69. Frito-Lay was aware of the overtime requirements of the FLSA.

70. Frito-Lay nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Parrish.

71. Frito-Lay's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

72. The full overtime wages owed to Parrish and the Similarly Situated Workers became "unpaid" when the work for Frito-Lay was done—that is, on Parrish and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

73. At the time Frito-Lay failed to pay Parrish and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Frito-Lay became liable for all prejudgment interest, liquidated damages, penalties, and any other damages owed under federal law.

74. In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

75. Even if Frito-Lay made any untimely payment of unpaid wages due and owing to Parrish or the Similarly Situated Workers, any alleged payment was not supervised by the Department of Labor or any court.

76. The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See*, *e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682, 683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

77. Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Frito-Lay's acts and omissions resulting in the unpaid wages in the first place.

78. Parrish and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Frito-Lay under federal and New York law.

### COLLECTIVE ACTION ALLEGATIONS

79. Parrish incorporates all other allegations.

80. Numerous individuals were victimized by Frito-Lay's patterns, practices, and policies, which are in willful violation of the FLSA.

81. Based on him experiences and tenure with Frito-Lay, Parrish is aware that Frito-Lay's illegal practices were imposed on the FLSA Collective.

82. The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

83. These employees are victims of Frito-Lay's unlawful compensation practices and are similarly situated to Parrish in terms of the pay provisions and employment practices at issue in this lawsuit.

84. The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

85. Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

86. Frito-Lay's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

87. The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

88. Parrish incorporates all other allegations.

89. The illegal practices Frito-Lay imposed on Parrish were likewise imposed on the New York Class members.

90. Numerous other individuals who worked for Frito-Lay were were not properly compensated for all hours worked, as required by New York law.

91. The New York Class is so numerous that joinder of all members of the class is impracticable.

92. Frito-Lay imposed uniform practices and policies on Parrish and the New York Class members regardless of any individualized factors.

93. Based on him experience and tenure with Frito-Lay, as well as coverage of the Kronos hack, Parrish is aware that Frito-Lay's illegal practices were imposed on the New York Class members.

94. New York Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

95. New York Class members were all not paid their contractually agreed wages.

96. Frito-Lay's failure to pay wages and overtime compensation in accordance with New York law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the New York Class members.

97. Frito-Lay's failure to pay proper wages and overtime compensation results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the New York Class members.

98. Parrish's experiences are therefore typical of the experiences of the New York Class members.

99. Parrish has no interest contrary to, or in conflict with, the members of the New York Class. Like each member of the proposed class, Parrish has an interest in obtaining the unpaid wages and other damages owed under the law.

100. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

101. Absent this action, many New York Class members likely will not obtain redress of their injuries and Frito-Lay will reap the unjust benefits of violating New York law.

102. Furthermore, even if some of the New York Class members could afford individual litigation against Frito-Lay, it would be unduly burdensome to the judicial system.

103. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

104. The questions of law and fact common to each of the New York Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

   a. Whether the New York Class members were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

   b. Whether Frito-Lay's failure to pay overtime at the rates required by law violated the NYLL; and

   c. Whether Frito-Lay issued wage statements in compliance with the NYLL.

105. Parrish's claims are typical of the New York Class members. Parrish and the New York Class members have all sustained damages arising out of Frito-Lay's illegal and uniform employment policies.

106. Parrish knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

107. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### FIRST CAUSE OF ACTION— FLSA VIOLATIONS
### AS TO PARRISH AND THE FLSA COLLECTIVE

108. Parrish incorporates each other allegation.

109. By failing to pay Parrish and the FLSA Collective members overtime at 1.5 times their regular rates, Frito-Lay violated the FLSA. 29 U.S.C. § 207(a).

110. Frito-Lay owe Parrish and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

111. Frito-Lay owe Parrish and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

112. Frito-Lay knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

113. Because Frito-Lay knew, or showed reckless disregard for whether, their pay practices violated the FLSA, Frito-Lay owe these wages for at least the past three years.

114. Frito-Lay's failure to pay overtime compensation to these FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

115. Because Frito-Lay's decision not to pay overtime was not made in good faith, Frito-Lay also owes Parrish and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

116. Accordingly, Parrish and the FLSA Collective members are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION—NYLL MINIMUM WAGE AND OVERTIME VIOLATIONS AS TO PARRISH AND THE NEW YORK CLASS

117. Parrish incorporates all other allegations.

118. The conduct alleged in this Complaint violates the NYLL, §§ 650 *et seq.*

119. At all relevant times, Frito-Lay was and is an "employer" within the meaning of the NYLL.

120. At all relevant times, Frito-Lay employed Parrish and the other New York Class members as "employees" within the meaning of the NYLL.

121. At all relevant times, Parrish and the New York Class have been covered by the NYLL.

122. The overtime wage provisions of NYLL Article 19 and its supporting regulations apply to Frito-Lay, and they protect Frito-Lay and the New York Class members.

123. Frito-Lay has failed to pay Parrish and the New York Class members overtime for all hours worked over 40 in a workweek at a rate of no less than 1.5x their regular rate of pay. 12 N.Y.C.R.C. § 142-2.2.

124. Within the applicable limitations period, Frito-Lay had a policy and practice of failing to pay proper overtime to the New York Class members for their hours worked in excess of 40 hours per week.

125. As a result of Frito-Lay's failure to pay proper overtime to Parrish and the New York Class members for work performed in excess of 40 hours in a workweek, Frito-Lay violated the NYLL.

126. Through its knowing or intentional failure to pay Parrish and the New York Class members the proper overtime wagest for hours worked in excess of 40 in a workweek, Frito-Lay willfully violated the NYLL, Article 19 §§ 650 *et seq.* and the supporting New York State Department of Labor Regulations.

127. Due to Frito-Lay's willful violations of the NYLL, Parrish and the New York Class members are entitled to overtime wages under the IMWL in an amount equal to 1.5x their regular rates of pay, liquidated damages, attorneys' fees, costs, and all other legal and equitable relief provided under the IMWL.

### THIRD CAUSE OF ACTION—NYLL WAGE NOTICE VIOLATIONS AS TO PARRISH AND THE NEW YORK CLASS

128. Parrish incorporates all other allegations.

129. Frito-Lay has willfully failed to furnish Parrish and the New York Class members with wage notices as required by NYLL, Article 6, § 195(1), in English or in the language identified by each employee as their primary language, at the time of hiring, and on or before February 1 of each subsequent year of the employee's employment, a notice containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

130. Through its knowing or intentional failure to provide Parrish and the members of the Rule 23 Class with the wage notices required by the NYLL, Frito-Lay has willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

131. Due to Frito-Lay's willful violations of NYLL, Article 6, § 195(1), Parrish and the New York Class members are entitled to statutory penalties per for each workday or workweek that Frito-Lay failed to provide Parrish and the New York Class members with proper wage notices, reasonable attorneys' fees, costs, and declaratory and injunctive relief, pursuant to NYLL, Article 6, § 198(1-b).

### FOURTH CAUSE OF ACTION—NYLL WAGE STATEMENT VIOLATIONS AS TO PARRISH AND THE NEW YORK CLASS

132. Parrish incorporates all other allegations.

133. Frito-Lay has willfully failed to furnish Parrish and the New York Class members with a statement with every payment of wages as required by NYLL, Article 6, § 195(3), listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked.

134. Through its knowing or intentional failure to provide Parrish and the New York Class members with the wage statements required by the NYLL, Frito-Lay has willfully violated NYLL, Article 6, §§ 190 *et seq.*, and the supporting New York State Department of Labor Regulations.

135. Due to Frito-Lay's willful violations of NYLL, Article 6, § 195(3), Parrish and the New York Class members are entitled to statutory penalties, reasonable attorneys' fees, costs, and declaratory and injunctive relief, as provided for by NYLL, Article 6, § 198(1-d).

**RELIEF SOUGHT**

Parrish prays for judgment against Frito-Lay as follows:

    a. For an order certifying a collective action for the FLSA claims;

    b. For an order certifying a class action for the New York law claims;

    c. For an order finding Frito-Lay liable for violations of state and federal wage laws with respect to Parrish and all FLSA Collective and New York Class members covered by this case;

    d. For a judgment awarding all unpaid wages, liquidated damages, and penalties to Parrish and all FLSA Collective members covered by this case;

e. For a judgment awarding all unpaid wages, liquidated damages, and penalties, to Parrish and all New York Class members covered by this case;

f. For an equitable accounting and restitution of wages due to Parrish and all FLSA Collective and New York Class members members covered by this case;

g. For an declaratory judgment that Frito-Lay's acts and omissions as to Parrish and the New York Class members are unlawful under the NYLL, Art. 6, §§ 190 *et seq.*, and Art. 19, §§ 650 *et seq.*, and supporting New York State Department of Labor Regulations;

h. For an injunction requiring Frito-Lay to pay all statutorily required wages to Parrish and the New York Class and to cease the unlawful activity affecting Parrish and the New York Class members, pursuant to the NYLL;

i. For a judgment awarding costs of this action to Parrish and all FLSA Collective and New York Class members covered by this case;

j. For a judgment awarding attorneys' fees to Parrish and all FLSA Collective and New York Class members covered by this case;

k. For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Parrish and all FLSA Collective and New York Class members covered by this case; and

l. For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Matthew S. Parmet*
By: _____
**Matthew S. Parmet**
TX Bar # 24069719
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone  713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**